IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JOB, f/k/a <br> WESLEY LUCIEN WILLIAMS, <br><br> Plaintiff, <br><br> vs. <br><br> OFFICER HAGEN, et al., <br><br> Defendants. | 8:04cv451 <br><br> MEMORANDUM AND ORDER |

This matter is before the court on filing no. 77, the Motion for Summary Judgment filed by the remaining defendants in this case, Douglas County Corrections Officers Hagen, Barnes, Fricke, Sanchez, McPhillips, Gorrin and Hubbard, former Warden Houston, and Douglas County, Nebraska.[1]  The defendants, other than Douglas County, are sued in both their individual and official capacities.

The plaintiff, an inmate at the Douglas County Correctional Center ("DCCC"), asserts federal civil rights claims pursuant to 42 U.S.C. § 1983, alleging that the individual defendants, employed at DCCC, used excessive force against the plaintiff in July of 2004, neglected to obtain adequate medical care for the plaintiff, and wrongfully placed him in administrative confinement.  The record reveals that on July 16, 2004, the plaintiff, apparently suffering from suicidal tendencies and emotional distress, jumped onto Officer Hagen in an unprovoked attack.  An altercation ensued in which Officer Wesley wrestled the plaintiff to the ground.  Officer Barnes joined in. The officers called a "code blue," and

---

[1] In filing no. 66, I dismissed defendants-Mosely, Wade, Barta and Brown from this litigation.

many other officers participated in shackling, handcuffing and removing the plaintiff from the area. The officers took the plaintiff to his room and watched him until Officer Gorrin told them to take the plaintiff to the nurse. The plaintiff was then placed on suicide watch and administrative confinement. See the Informational Reports of the incident ( filing no. 75-9). The plaintiff complains that some of the officers involved in restraining him were quite robust, and the plaintiff suffered cuts, a swollen eye and painful injuries to his arms and ribs. The plaintiff also complains that Officer Gorrin left the plaintiff's room without asking the plaintiff if he needed medical assistance, and it was only after the plaintiff informed Officer Barta of his need for medical attention that Gorrin directed other officers to escort the plaintiff to the nurse. Nevertheless, on August 26 and 27, 2004, the plaintiff sent two very gracious formal apologies to Officer Hagen (filing no. 75-11 at 1-2). Officer Hagen, in turn, expressed his appreciation that the plaintiff had reached out in that manner (id. at 2).

### Exhaustion of Administrative Remedies

Regarding the defendants' argument that the plaintiff failed to exhaust his administrative remedies, as required by 42 U.S.C. § 1997e(a) of the Prison Litigation Reform Act ("PLRA"), I disagree. Instead, I agree with the plaintiff that a prisoner cannot be held to the PLRA's exhaustion requirement if prison officials prevent the inmate from exhausting administrative remedies, and the plaintiff has made a sufficient showing that his access to the grievance process was obstructed by staff at the DCCC. See, e.g., Lyon v. Vande Krol, 305 F.3d 806, 808-09 (8th Cir. 2002); Foulk v. Charrier, 262 F.3d 687, 697-98 (8th Cir. 2001). Accord Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001) ("[A] remedy that prison officials prevent a prisoner from 'utiliz[ing]' is not an 'available' remedy

under § 1997e(a) ....") (alterations in original). In addition, the defendants complain that the plaintiff failed to appeal one of his grievances to the "Chief Deputy." However, the court's records indicate that there has been no Chief Deputy at DCCC since the departure of Ann O'Connor in April of 2003.[2] Therefore, insofar as the defendants' Motion for Summary Judgment relies on an alleged failure by the plaintiff to exhaust administrative remedies pursuant to 42 U.S.C. § 1997e(a), the motion must be denied.

However, when a plaintiff brings a claim against a government employee or a political subdivision in federal court, as opposed to a tort claim in state court under the Nebraska Political Subdivisions Tort Claims Act, the federal claim is measured against the exacting standard for a violation of the U.S. Constitution. As discussed next, even viewed in the light most favorable to the plaintiff, his claims regarding wrongful placement in administrative confinement, lack of adequate medical care and excessive force do not meet the standards for a federal constitutional violation.

---

[2]The *Inmate Rules and Regulations Handbook*, section II.11.1 *et seq.*, sets forth the grievance procedures in effect at DCCC. The procedure starts with the initial formal grievance contemplated by section II.11.2.A of the Handbook, followed by an optional "appeal to the Chief Deputy," as set forth in section II.11.2.C. Section II.11.2.D of the Handbook states that inmates who disagree with the decision by the Chief Deputy are free to pursue other remedies such as an action in court.

However, taking judicial notice of the court's records in similar cases, the court notes that Ann O'Connor served as the Chief Deputy of the Douglas County Department of Corrections, with oversight of DCCC, from March 1999 through April 2003. See, e.g., Case No. 8:02cv533, Allen v. Douglas County Jail, et al., Exhibit 2 to filing no. 21, Affidavit of Ann O'Connor dated July 21, 2003. See also Case No. 4:02cv3255, Scott v. Douglas County, et al., Exhibit 2 to filing no. 25, Affidavit of Ann O'Connor dated October 27, 2003. Since O'Connor's departure, there has been no official bearing the title of Chief Deputy at DCCC, which may explain, in part, the absence of "step two" grievance appeals to the Chief Deputy since then.

**Administrative Confinement**

The placement of the plaintiff on administrative confinement, even if inequitable in the circumstances, did not violate either the Due Process Clause of the Fourteenth Amendment or the Cruel and Unusual Punishment Clause of the Eighth Amendment to the U.S. Constitution. Therefore, insofar as the plaintiff alleges a claim for relief based on his placement on administrative confinement, summary judgment must be granted in favor of the defendants on that claim for the reasons explained below.

First, prisoners do not have a liberty interest in remaining free from segregation for relatively short periods of duration. Thus, the Due Process Clause did not protect the plaintiff from his period of administrative confinement, even if the placement was erroneous or unfair.[3] "The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." Wilkinson v. Austin, 545 U.S. 209, 221 (2005). Thus, claims regarding the right to either procedural or substantive due process must begin with identification of a protected liberty or property interest. Singleton v. Cecil, 176 F.3d 419, 424-25, 425 n. 7 (8th Cir.) (*en banc*), cert. denied, 528 U.S. 966 (1999).

In order to constitute a liberty interest, an individual must have a legitimate claim or entitlement to the subject of the deprivation which rises to more than a unilateral hope, or expectation. Kentucky Dept. of Corrections v. Thompson, 490 U.S. 454, 459 (1989). A

---

[3]The record reveals no indication of any independent unconstitutional purpose for the placement in segregation, such as racial discrimination or retaliation for the exercise of a First Amendment right.

protected liberty interest may arise from either the Due Process Clause of the U.S. Constitution, itself, or from a state-created statutory entitlement. Hewitt v. Helms, 459 U.S. 460, 466 (1983); Fraise v. Terhune, 283 F.3d 506, 522 (3d Cir. 2002) (citations omitted).

The Due Process Clause of its own force does not afford a prisoner a liberty interest in remaining in the general prison population. Lekas v. Briley 405 F.3d 602, 607 (7th Cir. 2005). See also Holly v. Woolfolk, 415 F.3d 678, 679 (7th Cir. 2005) ("being placed in segregation is too trivial an incremental deprivation of a convicted prisoner's liberty to trigger the duty of due process"), cert. denied, 126 S.Ct. 1166 (2006). Accord Christianson v. Clarke, 932 F. Supp. 1178, 1182 (D. Neb. 1996) ("[T]he Due Process Clause itself does not protect any liberty interest in remaining free from administrative segregation or protective custody.").

The plaintiff's claim to a state-created liberty interest is governed by the Supreme Court's decision in Sandin v. Conner, 515 U.S. 472 (1995). "Sandin found no liberty interest protecting against a 30-day assignment to segregated confinement because [the assignment] did not 'present a dramatic departure from the basic conditions of [the inmate's] sentence.'" Wilkinson v. Austin, 545 U.S. at 223, *quoting* Sandin, 515 U.S. at 485. In Sandin, the Court substantially narrowed the circumstances in which a state-created liberty interest arises:

> The time has come to return to the due process principles we believe were correctly established and applied in Wolff and Meachum. Following Wolff, we recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause .... But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force ... nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

5

Id. at 483-84 (citations omitted). Therefore, to demonstrate a liberty interest created by state law, the plaintiff must show that the protested conditions exceed the normal range and limits of custody and impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id.

However, the Eighth Circuit has "consistently held that administrative and disciplinary segregation are not atypical and significant hardships under Sandin." Portley-El v. Brill, 288 F.3d 1063, 1065 (8th Cir. 2002). Accord Kennedy v. Blankenship, 100 F.3d 640, 642 n. 2, 643 (8th Cir.1996) (placement in punitive isolation was not an atypical and significant deprivation even though the prisoner faced restrictions in privileges regarding mail, telephone, visitation, commissary, and personal possessions). See also Phillips v. Norris, 320 F.3d 844, 847 (8th Cir. 2003): "We have consistently held that a demotion to segregation, even without cause, is not itself an atypical and significant hardship." The absence of contact visitation, exercise privileges, and chapel rights for 37 days did not constitute an atypical and significant hardship. Id. See also Griffin v. Vaughn, 112 F.3d 703, 706 (3d Cir. 1997) (administrative confinement for 15 months did not impose an atypical and significant hardship). Similarly, in Jones v. Baker, 155 F.3d 810, 813 (6th Cir. 1998), the Sixth Circuit did not consider confinement in administrative segregation for two and one-half years an atypical and significant hardship.

Second, as for violation of the Eighth Amendment by placement of the plaintiff in administrative confinement, the Eighth Amendment is violated by the denial of "the minimal civilized measure of life's necessities," or by incarceration under conditions "posing a substantial risk of serious harm." Simmons v. Cook, 154 F.3d 805, 807 (8th Cir. 1998) (citation and internal quotation marks omitted). It is the "unnecessary and wanton infliction

of pain" which constitutes cruel and unusual punishment forbidden by the Eighth Amendment.  Hope v. Pelzer, 536 U.S. 730, 737 (2002) (citations omitted).  See also Phillips v. Norris, 320 F.3d 844, 848 (8th Cir. 2003):

> To sustain this claim, [the plaintiff] needs to show "unnecessary and wanton infliction of pain," as well as a deprivation "denying the minimal civilized measure of life's necessities." Wilson v. Seiter, 501 U.S. 294, 298 ... (1991) (internal quotations omitted).  [The plaintiff]  must also show that the defendants were deliberately indifferent to his health or safety, Farmer v. Brennan, 511 U.S. 825, 828 ... (1994), and that they acted maliciously for the purpose of causing him harm, Whitley v. Albers, 475 U.S. 312, 320-21 ... (1986).

The plaintiff has not demonstrated, or even alleged, any facts even approaching that exacting standard.  Far worse conditions than those experienced by the plaintiff have been held not to violate the Eighth Amendment.  See generally Key v. McKinney, 176 F.3d 1083, 1086 (8th Cir. 1999).  The plaintiff's placement in administrative confinement did not violate the Constitution of the United States.

### Medical Care

It is equally difficult to establish a federal constitutional deprivation in the area of prison medical care, as opposed to the tort of negligence under state law.  The plaintiff received medical care when he asked for it.  He protests that Corrections Officer Gorrin never asked him if he needed medical attention when it was obvious that he did after the altercation which led to the plaintiff's injuries.  Two other officers were present with Officer Gorrin, and they, too, failed to inquire as to the plaintiff's medical needs.  Therefore, a delay of several hours ensued before a nurse examined the plaintiff.  While possibly negligent conduct under state law, the described omissions do not reach the magnitude of a federal constitutional violation.

**County Liability**

The defendants in their official capacity, i.e., Douglas County, assert that the plaintiff cannot point to a custom or policy by which the County caused constitutional injury to the plaintiff.[4] The federal civil rights laws contain no equivalent to the common law tort liability based on respondeat superior. Therefore, under 42 U.S.C. § 1983, the County may not be held liable on principles of vicarious liability or respondeat superior for constitutional injuries allegedly inflicted by its employees, such as the officers who allegedly delayed the plaintiff's access to medical treatment. See, e.g., Shrum ex rel. Kelly v. Kluck, 249 F.3d 773, 778 (8th Cir. 2001), *citing* Board of County Commissioners of Bryan County, Oklahoma v. Brown, 520 U.S. 397, 405 (1997) and City of Canton v. Harris, 489 U.S. 378, 385 (1989): "Rigorous standards of culpability and causation must be applied to ensure that [an employer] is not held liable solely for the actions of its employees .... The purpose of such a stringent standard is to prevent § 1983 liability from collapsing into state tort law or into respondeat superior liability, an intent not contemplated by § 1983."

"A plaintiff may establish municipal liability under § 1983 by proving that his or her constitutional rights were violated by an 'action pursuant to official municipal policy' or misconduct so pervasive among non-policymaking employees of the municipality 'as to constitute a "custom or usage" with the force of law.'" Kuha v. City of Minnetonka, 365

---

[4]A suit against a public employee in his or her official capacity is actually a suit against the public employer. Kentucky v. Graham, 473 U.S. 159, 165 (1985). In this case, an action against a Douglas County employee in his or her official capacity is considered, in law, a suit against the County itself, while an action against the same person in his or her individual capacity is considered a suit against the person and the person's own assets.

F.3d 590, 603 (8th Cir. 2003). See also Turney v. Waterbury, 375 F.3d 756, 761-62 (8th Cir. 2004): "'In a section 1983 action, a municipality may only be held liable for constitutional violations which result from a policy or custom of the municipality.'...." (Citation omitted.) The plaintiff has not identified an official policy or widespread custom at DCCC which had the potential to cause injury to inmates such as the plaintiff in need of medical care.

**Individual Liability**

The Eighth Amendment to the Constitution requires jail officials to provide humane conditions of confinement, including adequate food, clothing, shelter, and medical care. Farmer v. Brennan, 511 U.S. 825, 832 (1994). A prisoner's Eighth Amendment rights are violated if prison officials show "deliberate indifference" to the prisoner's "serious medical needs." Estelle v. Gamble, 429 U.S. 97, 104-07 (1976).

The objective element of an Eighth Amendment claim requires a deprivation which, viewed objectively, is sufficiently "serious," that is, "the prison official's act or omission must result in the denial of 'the minimal civilized measure of life's necessities;' or the prison official must incarcerate the inmate under conditions 'posing a substantial risk of serious harm.'" Simmons v. Cook, 154 F.3d 805, 807 (8th Cir. 1998) (citation omitted). The subjective element of an Eighth Amendment claim requires that an official act with deliberate indifference to inmate health or safety. Deliberate indifference means that the official both was aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. Farmer v. Brennan, 511 U.S. 825, 837 (1994). Deliberate indifference describes a mental state more blameworthy than negligence. A plaintiff is not required to show that the defendant acted for the very

purpose of causing harm or with knowledge that harm will certainly result. Id., 511 U.S. at 835. However, "deliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct." Olson v. Bloomberg, 339 F.3d 730, 736 (8th Cir. 2003).

The plaintiff has not come forward with any evidence that the delay in medical care he experienced actually resulted in any detrimental impact on the plaintiff's health. A plaintiff who complains that delay(s) in medical treatment violated the Eighth Amendment must present medical evidence that such delay(s) actually caused an adverse effect on the plaintiff's condition. See, e.g, Laughlin v. Schriro, 430 F.3d 927, 929 (8th Cir. 2005):

> To prevail on a claim that a delay in medical care constituted cruel and unusual punishment, an inmate must show both that: (a) the deprivation alleged was objectively serious; and (b) the prison official was deliberately indifferent to the inmate's health or safety .... When the inmate alleges that a delay in medical treatment rises to the level of an Eighth Amendment violation, "the objective seriousness of the deprivation should also be measured 'by reference to the effect of delay in treatment.' "...To establish this effect, the inmate "must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment ..." .... **While Laughlin submitted evidence documenting his diagnosis and treatment, he offered no evidence establishing that any delay in treatment had a detrimental effect and thus failed to raise a genuine issue of fact on an essential element of his claim. As such, the grant of summary judgment in favor of the Appellees was proper** ....

(Emphasis added.) See also Dulany v. Carnahan, 132 F.3d 1234, 1243 (8th Cir. 1997) (summary judgment for defendants was properly granted in the absence of verifying medical evidence that the delays in treating the plaintiff's cardiac condition caused an adverse effect). Thus, the defendants' failure to inquire into the plaintiff's immediate need for medical assistance, while perhaps neglectful, did not itself cause injury to the plaintiff or violate the Eighth Amendment.

### Excessive Force

The Eighth Circuit Court of Appeals explained the principles governing prisoner claims of excessive force in Treats v. Morgan, 308 F.3d 868, 872 (8th Cir. 2002), as follows: "The Eighth Amendment protects inmates from the unnecessary and wanton infliction of pain by correctional officers, Whitley v. Albers, 475 U.S. 312, 319 ... (1986), regardless of whether an inmate suffers serious injury as a result. Hudson v. McMillian, 503 U.S. 1, 9 ... (1992). Officers are permitted to use force reasonably 'in a good-faith effort to maintain or restore discipline,' but force is not to be used 'maliciously and sadistically to cause harm.' Id. at 7.... Factors to be considered in deciding whether a particular use of force was reasonable are whether there was an objective need for force, the relationship between any such need and the amount of force used, the threat reasonably perceived by the correctional officers, any efforts by the officers to temper the severity of their forceful response, and the extent of the inmate's injury. Id. See also Hickey v. Reeder, 12 F.3d 754, 758 (8th Cir. 1993)." Accord Fillmore v. Page, 358 F.3d 496, 503-10 (7th Cir. 2004). Even though the plaintiff sustained injuries, there is nothing in the record to suggest that the defendants used force maliciously and sadistically to cause harm or that the defendants exceeded the degree of force they perceived necessary to subdue the plaintiff in the circumstances of an unprovoked assault on a corrections officer.

In addition, the court could not grant the plaintiff any of the remedies he seeks. In his complaint, the plaintiff specifically states that he does not request damages. Instead, he seeks injunctive relief in the form of acknowledgment of wrongdoing by the defendants, improvements to the jail grievance system, and employment sanctions imposed against the individual defendants. However, this court cannot force the defendants to apologize to the plaintiff or personally acknowledge fault. The court also cannot require Douglas

County to fire or suspend corrections officers.  Finally, it is up to the DCCC administration to improve the grievance process at DCCC, especially if  Douglas County, the County Department of Corrections and DCCC administration expect DCCC prisoners to be held to the PLRA's exhaustion requirement in federal civil rights litigation.

For the reasons discussed in this Memorandum and Order, the defendants' Motion for Summary Judgment will be granted, and the plaintiff's complaint, as amended, will be dismissed.

IT IS THEREFORE ORDERED:

1.  That for the reasons stated in this Memorandum and Order, filing no. 77, the defendants' Motion for Summary Judgment, is granted;

2.  That the plaintiff's complaint, as amended, is dismissed with prejudice; and

3.  That a separate judgment will be entered accordingly.

DATED this 30th day of January, 2007.

BY THE COURT:

s/Joseph F. Bataillon
JOSEPH F. BATAILLON
Chief District Judge